**The STATE of Ohio, Appellee,**

v.

**NOLAN, Appellant.**

[Cite as *State v. Nolan* (1992), 78 Ohio App.3d 564.]

Court of Appeals of Ohio,
Morgan County.

No. CA 91–5.

Decided June 30, 1992.

*Richard L. Ross,* Prosecuting Attorney, for appellee.
*Gregory W. Meyers,* for appellant.

WILLIAM B. HOFFMAN, Judge.

Defendant-appellant, Louise Nolan ("appellant"), was a sixty-eight-year-old, white widow indicted for one count of felonious assault with a firearm specification. After jury trial in the Court of Common Pleas of Morgan County, she was found guilty, convicted and sentenced to serve five to fifteen years in prison, plus an additional three years for the firearm specification.

### Facts

The instant victim is Ronald Jenkins, a black man, who filed the initial complaint against defendant alleging she had fired a gun at him from her car as he drove his backhoe on a rural road near Chesterhill, at approximately 4:45 p.m. on April 23, 1990. Jenkins informed police that defendant was driving her maroon car in an opposite direction from his and that her

daughter, Doreen Roberts, was in the passenger seat and an unknown child was in the back seat. Jenkins testified he saw defendant come to a near stop and hold what appeared to be a gun out of the driver's side window with both hands. He stopped his vehicle, then heard what sounded like a gun shot. However, neither he nor the backhoe (which had a metal cage) was struck by a bullet, nor was any bullet or casing ever found. No weapon was found. Appellant drove away at a normal rate of speed for the conditions.

Appellant denied firing a gun at Jenkins, claiming that she was working in her yard at her Chesterhill home at that time. Nolan's daughter, Doreen, and her son, Robert Nolan, both testified that they were with appellant at her house at the time that Jenkins claimed the shooting occurred. Appellant's other daughter, Regina Jones, also testified that she came to Nolan's house with her seven children at about 4:45 to 4:55 p.m. and that appellant was weeding a flower bed in the back yard and Doreen was mowing the lawn.

There was no direct eyewitness to the shooting, but Lucy Beechy and her sister, Annie Beechy, were in a sawmill-type building some distance off the road when they saw someone they thought to be appellant drive by. However, the Beechys testified the car was going in the same direction that Jenkins was traveling when he was accosted.

During cross-examination of Regina Jones, the prosecutor introduced evidence that the Ku Klux Klan had met on appellant's property in August 1988. The prosecution pursued this line of questioning during the cross-examination of Robert Nolan. Defense counsel also developed testimony concerning a civil suit appellant had filed against Jenkins for collection of back rent, and the past live-in relationship between Doreen and appellant.

After her motion for new trial was overruled, appellant timely filed her notice of appeal raising the following eight assignments of error:

### Assignment of Error No. I

"The trial court erred to the prejudice of the defendant-appellant's substantial rights to a fair trial, due process and effective assistance of counsel by allowing the state to introduce improper evidence to impeach defense witnesses."

### Assignment of Error No. II

"Defendant-appellant's substantial rights to due process, a fair trial and effective assistance of counsel were prejudiced by the admission of irrelevant evidence concerning allegations of other crimes, wrongs or acts committed by defendant-appellant."

### Assignment of Error No. III

"The trial court erred to the prejudice of defendant-appellant's substantial rights by allowing the state's law enforcement witnesses to render inadmissible opinion and hearsay testimony in violation of defendant-appellant's rights to a fair trial, due process, confrontation and effective assistance of counsel."

### Assignment of Error No. IV

"The defendant was denied her right to a fair trial as a result of prosecutorial misconduct."

### Assignment of Error No. V

"The trial court erred to the prejudice of defendant's substantial right to a fair trial and due process of law by failing to recognize and correct the multiple instances of plain error which occurred during her trial."

### Assignment of Error No. VI

"The verdict of guilty is against the manifest weight of the evidence."

### Assignment of Error No. VII

"Defendant's substantial right to a fair trial was violated by improper jury instructions."

### Assignment of Error No. VIII

"Defendant's rights to due process, a fair trial, confrontation of witnesses and counsel were all prejudiced by the ineffective assistance of trial counsel."

### I

 This claim centers upon the testimony of appellant's two key witnesses: her daughter, Doreen Roberts, and son, Robert Nolan. Both were called to corroborate appellant's statement that she never left her house during the afternoon of the subject day.

Evid.R. 608 and 609(A) control and respectively read in pertinent part:

"Rule 608. Evidence of Character and Conduct of Witness

"(A) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

"(B) Specific instances of conduct. Specific instances of the conduct of a witness, for the purposes of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may however, in the discretion of the court, *if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or un-truthfulness of another witness as to which character the witness being cross-examined has testified."* (Emphasis added.)

"Rule 609. Impeachment by Evidence of Conviction of Crime

"(A) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination, *but only if* the crime (1) was punishable by death or imprisonment in excess of one year * * *, or (2) involved dishonesty or false statement, regardless of the punishment whether based upon state or federal statute or ordinance." (Evid.R. 609 has since been amended effective July 1, 1991. However, the above quoted rule was in effect at the time of the instant trial in October 1990.)

As articulated by appellant, the state's cross-examination of both Doreen and Robert was prejudicial on its face and directly violative of the two rules cited *supra.* Immediately upon cross-examination of Doreen, the state inquired into her alleged prior assault charge and conviction (misdemeanor) in the following manner:

"Q. Weren't you and Ron jointly charged with assault and you pled guilty to it? Over in County Court?

"A. Repeat that question.

"Q. Back when you and Ron lived together, you were both charged with assault?

"A. I never beat on no one.

"Q. And you wound up pleading guilty to it, didn't you?

"A. I never beat on no one."

Appellee again inquired into Doreen's alleged prior misdemeanor conviction upon recross-examination.

As held by the Ohio Supreme Court in a case emanating from this court of appeals, Evid.R. 608 and 609 work in *pari materia* in the following manner:

"Other than the Evid.R. 609 exception for certain criminal convictions, a witness' credibility may *not be impeached* by extrinsic proof of specific

instances of his conduct. Such conduct may be inquired into only by the intrinsic means of cross-examination within the guidelines set forth in Evid.R. 608(B)." (Emphasis added.) *State v. Kamel* (1984), 12 Ohio St.3d 306, 12 OBR. 378, 466 N.E.2d 860, paragraph two of the syllabus.

That "intrinsic means of cross-examination" means nothing more than following the clear dictates of Evid.R. 608(B), *viz.*, an inquiry into "character for truthfulness or untruthfulness."

The Staff Note to Evid.R. 608(B) is instructive:

"This subdivision is nearly identical to Federal Evidence Rule 608(B) and reflects prior Ohio law relating to scope of cross-examination. * * * It permits cross-examination of a character witness as to specific instances of conduct which may have a clear bearing upon either that witness's truthful character *or the basis of his testimony as to the truthful character of the witness about whom the testimony of truthfulness was made. Unlike Federal Evidence Rule 608(B), the rule contains the word 'clearly' in the second sentence. The rule requires a high degree of probative value of instances of prior conduct as to truthfulness or untruthfulness of the witness before the court, in the exercise of its discretion, will allow cross-examination as to such prior conduct for purposes of attacking the credibility of the witness.*

"Except for the provisions of Rule 609 respecting conviction of a crime, collateral or extrinsic evidence of such instances of bad conduct is not admissible. This limitation is also consistent with prior Ohio law. *State v. Cochran[e]* (1949), 151 Ohio St. 128, [38 O.O. 575, 84 N.E.2d 742]."

Appellee's response to the subject argument in its brief is inaccurate and flawed:

"Evid.R. 608 allows the character of witnesses to come into evidence for evaluation of their truth and veracity. Doreen Roberts, on direct examination, (T. 343, lines 15–19) brought up the peacefulness of her mother so it was proper to show both the fact that she had been involved in violence and so had her mother."

As pointed out by appellant, page 343 of the transcript at lines 15–19 contains the direct examination of Robert Nolan.

Doreen's direct examination appears at transcript pages 323–328, and nowhere therein does she comment upon or speak to the "peacefulness" of appellant.

In similar vein, the state improperly questioned Doreen regarding her epilepsy and drinking problem. Nowhere in the record is there any foundation that this witness was drinking on the subject day or that her ability to

recall events was impaired by the alleged epilepsy condition. Such questioning also violates Evid.R. 608.

Appellant also contends that her right to a fair trial was destroyed when her own counsel asked Robert Nolan about his prior contacts with the law and his drinking problem. This claim is more properly presented under Assignment of Error VIII.

Appellant summarizes her argument in her brief as follows:

"Throughout the trial, the prosecutor, by intention, the trial court, by default, and defense counsel, by ineffectiveness, violated the basic principle embodied in Rule 608 that '[o]nly matters which are relevant to truth and veracity, and not to a witness' general moral character, are the proper subject of cross-examination.' "

Appellant correctly cites *State v. Scott* (1980), 61 Ohio St.2d 155, 15 O.O.3d 182, 400 N.E.2d 375, paragraph three of the syllabus, which states:

"In impeaching the credibility of a witness, inquiry into general reputation or character should be restricted to reputation for *truth and veracity. (Craig v. State* [1854], 5 Ohio St. 605, approved and followed.)" (Emphasis *sic.*)

See, also, analogously, *State v. Ellis* (1982), 8 Ohio App.3d 27, 8 OBR 29, 455 N.E.2d 1025, syllabus, which states:

"Evid.R. 609(A) does not provide for using a defendant's prior misdemeanor assault conviction * * * for impeachment purposes."

Because there were no objections to the Evid.R. 608 and 609 violations during Doreen's testimony, we are left with a plain error analysis. (Because appellant's own counsel opened the door to the objectionable inquiry into Robert's character, and because appellant's claim of ineffective representation is more properly raised under subsequent assignments of error, we confine our discussion herein to plain error as to Doreen's testimony.)

Our test is:

"Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

On the other hand, this court of appeals has articulated the countervailing consideration:

"The entire trial, commencing with preliminary examination of prospective jurors, is structured and calculated to give life and force to the Anglo-American tradition that guilt does not exist until after it has been determined

solely from the evidence." *State v. Malterer* (Sept. 15, 1987), Tuscarawas App.No. 86AP100071, unreported, at 7, 1987 WL 17632.

We are also guided by the following:

"(D) Plain Error. Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." Evid.R. 103.

Because the inadmissible evidence sufficiently undermined the credibility and character of Doreen, appellant's constitutional right to a fair trial was substantially prejudiced as described *supra*. To hold otherwise would be to ignore the rules as stated, the authorities supporting their enforcement, and this court's recognition of plain error.

Assignment of Error No. I is sustained.

## II

We elect to discuss the merits of this assigned error under Assignment of Error No. VIII.

## III

■ This question revolves around the testimony of the investigating officers Whipple and Bankes. Appellant maintains that the two officers, especially Whipple, were allowed to present "lay opinion" about appellant's mental condition, prejudicing her in a substantive manner. Appellant states in its brief:

"Far from profiting by his putative lay opinion about Mrs. Nolan's mental health, the jury was pervasively prejudiced by Whipple's opinion that Mrs. Nolan needed hospitalization because she had in fact shot at Jenkins."

Although it is apparent from the record that Whipple was permitted to extend his testimony into the opinion sector, there being no objection from defense counsel, his testimony was properly admitted. Thus, we decline to sustain this assignment of error as to the merits of the testimony as admitted. On the other hand, the failure of defendant's counsel to timely object to arguably objectionable testimony lends itself to ineffective representation. Again, see Assignment of Error No. VIII.

Assignment of Error No. III is overruled.

## IV

■ Although we agree with appellant that the prosecutor did go beyond his province by virtue of vouching for the integrity of the state's case and also

by arguing for a conviction to foreclose future criminal conduct, *i.e.* "Yes, there is something of a Chesterhill feud. And its got to stop all the name calling and harassing, most of which is not a violation of the law, but often provokes people * * * has got to stop before someone does get hurt[,]" we nonetheless overrule this fourth assignment of error. As prior claims have demonstrated, defense counsel's failure to object throws the subject argument into an ineffective representation claim.

This fourth assigned error is overruled.

## V

Based upon our disposition of the first and eighth assignments of error, and our ultimate judgment herein, we decline to reach a merit discussion of this fifth assignment of error which is a cumulative claim of foregoing assigned errors.

## VI and VII

Based upon our disposition herein, we need not discuss these assigned errors.

## VIII

*State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus sets forth the controlling test for ineffective representation:

"2. Counsel's performance will not be deemed ineffective unless and until counsel's performance has proved to have fallen below an objective standard of reasonable representation and in addition, prejudice arises from counsel's performance. *State v. Lytle* (1976), 48 Ohio St.2d 391 [2 O.O.3d 495, 358 N.E.2d 623], *Strickland v. Washington* (1984), 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674], followed.

"3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."

Taking the above-quoted syllabus statements in order, we hold that paragraph two of the syllabus was met in that trial counsel's performance herein markedly fell below an objective standard of reasonable representation and because of this ineffective demonstration, prejudice indeed arose therefrom. We concur with appellant when she argues in her brief that (referring to trial counsel):

"He failed completely in his duty to raise the fundamental—the rudimentary—objections to improper impeachment evidence; improper prior bad acts evidence; improper character evidence; improper opinion evidence; and improper actions by the prosecutor. * * * "

We also agree that appellant's defense was "hoisted with one's own petard" by trial counsel's ineffective representation, specifically admitting improper impeachment evidence against his own witness (Robert Nolan) and by pursuing appellant's KKK "involvement" (the meeting on her property in 1988).

In a disjointed closing argument, trial counsel stated:

"[Whipple] admitted that he had been there numerous times. Been shouts, threats, got the son for disorderly conduct, that they'd been out there a lot of times between the Jenkins and the Nolans. Gone on for some time and I can kind of understand why the sheriff's department is just kind of fed up with this whole what you might describe as a feud out there."

Based upon the foregoing, we conclude that the second part of the two-pronged *Bradley* test was also achieved in that trial counsel failed to function as an effective advocate. *Strickland* instructs in 466 U.S. at 685, 104 S.Ct. at 2063, 80 L.Ed.2d at 692:

"That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.

For the reasons stated above, this eighth and final assigned error is sustained.

For the reasons stated *supra*, the judgment of the Court of Common Pleas of Morgan County is reversed.

*Judgment reversed.*

GWIN, P.J., and SMART, J., concur.