THE STATE OF OHIO, APPELLEE, *v.* COCCO, APPELLANT.

(No. 2096—Decided May 21, 1943.)

*Mr. D. Deane McLaughlin,* prosecuting attorney, and *Mr. D. Bruce Mansfield,* for appellee.

*Mr. Oscar M. Abt* and *Mr. James M. Aungst,* for appellant.

MONTGOMERY, P. J. The defendant, appellant herein, was indicted, tried, convicted of murder in the first degree without recommendation of mercy, and sentenced. From that judgment of conviction an appeal was perfected to this court.

There are six assigned errors. Numbers five and six relate to the charge of the court. In that charge we find nothing prejudicially erroneous and those assignments may be disregarded. The others in their order are:

1. It is urged that the defendant was so badly represented in the Common Pleas Court as to have been in effect without representation. His then counsel was of his own choosing. The record would indicate that this counsel handled himself well enough in the presentation of evidence and the examination of witnesses.

For reasons of his own, and to develop a theory, this

counsel evidently was guilty of gross errors in judgment and did prejudice his client thereby.

In the *voire dire* examination of jurors and in his opening statement he indicated that the defense would be an alibi. He offered no evidence in support of such defense and no explanation of such failure to do so.

He volunteered and reiterated to the jury the proposition that his client had a criminal record. In the course of his argument he referred to the use of aliases by his client.

These matters are the ones to be discussed under the other assignments of error. Present counsel for defendant are obliged to rely on three lines of alleged erroneous conduct on the part of the state, to all of which this former counsel made his contribution.

Ordinarily there would be no reversal on the basis of chosen counsel proving himself inept and injudicious. However, the fact that he made such contributions to the cause of the state is to be taken in connection with the assigned errors and does in fact magnify them. That fact imposed an additional burden on the trial court and increased his duty to insure the defendant a fair trial.

2. Claim is made that there was abuse of discretion and error in permitting the reopening of the state's case after it had rested, for the admission of evidence as to another alleged similar offense, and in the charge of the court concerning it.

The charge of the court made immediately following the introduction of this evidence was not erroneous, if the evidence were competent. It is based squarely on the holding of the Supreme Court in *Whiteman* v. *State*, 119 Ohio St., 285, 164 N. E., 51, 63 A. L. R., 595. And of course the reopening of the case on application of the state did not constitute an abuse of discretion. Was it error to admit this evidence?

As Judge Marshall stated on page 291 of the *Whiteman case*:

"In a number of cases in this court convictions have been reversed because of the admission of testimony of collateral offenses, but in each instance this court has recognized that there are well-defined exceptions to the general rule of exclusion. It is only fair to say that there has not been unquestioned harmony or clear logic in all the cases where judgments have been reversed on that ground."

That case discusses at length the relevancy of such testimony, and in the first paragraph of the syllabus and in the opinion on page 290, it is held that testimony of other unconnected crimes may be received, where the sole purpose of such testimony is to establish identity, and the testimony is relevant to that issue.

The *Whiteman case* was decided November 14, 1928. Section 13444-19, General Code, became effective July, 1929. That section makes proof of other like acts competent to show motive, intent, absence of mistake or accident, or a scheme, plan or system in doing an act. It does not by its terms make the evidence competent to show the identity of the defendant. But this court has held, and in effect it is stated in 12 Ohio Jurisprudence, 336, Section 323, that evidence of other offenses were admissible under established rules of evidence before the passage of this section and that such section is declaratory and procedural.

However, the second paragraph of the syllabus in the *Whiteman case* is in this language:

"Where other offenses of like character are committed by the same persons in the same locality within a period of time reasonably near to the offense on trial, and where the same plan, system and methods are followed, testimony of such other offenses is relevant to the issue of identity."

In the instant case, the other offense as to which testimony was admitted was not committed in the same locality as the one for which the defendant was being tried. The latter was committed in Canton, Ohio, the other in Hamtramck, Michigan. In the local case, two footpads waylaid and murdered, by shooting, the decedent at this own garage while he was alighting from his car. In the Hamtramck case, two men attempted to stage a holdup in a public street, just outside a bank, and Cocco's admitted or professed connection with it was that he drove the car in which those who attempted the robbery had intended to make their "get-away."

We hold that even under the language of the *Whiteman case,* which broadened the understood rule, the evidence was not competent and its admission constituted prejudicial error.

3. In the course of the opening argument for the state, the prosecuting attorney read to the jury a notice which had been served upon him that evidence would be offered to prove an alibi, to wit, that at the time of the alleged offense the defendant was in Bellaire, Ohio. This notice had been given in accordance with Section 13444-20, General Code. It was signed "Dominic Cocco by Joseph E. Julius his attorney." It had not been filed with the papers in the case. It was not offered in evidence. When it was read to the jury, the statement was made, that it was "signed not only by the defense attorney, but by the defendant himself," obviously a misstatement.

Counsel for defendant objected to the admission of this document, then withdrew the objection for some reason not understandable. And again the court was confronted with an instance of manifest lack of understanding on the part of counsel as to his client's rights and his danger.

Under no conceivable theory should this document have been presented to the jury. It could not do otherwise than prejudice the jury, when there had been no

evidence of an alibi. And the act of defendant's counsel in discussing the matter of alibi before the prospective jurors and the impaneled jury did but aggravate the prejudice. The court should on its own motion have protected the defendant from this reading of the notice and the failure so to protect him was erroneous and prejudicial.

4. The final assignment of error to be discussed is the reference in argument by counsel for the state to the matter of aliases charged to the defendant. The assistant prosecutor in his argument to the jury said:

"Did he take the stand in his own behalf? I don't have to tell this jury why he didn't take the stand. That should be obvious. Dominic Cocco; Mimi Cocco; Nick Cocco; Jack Risko; Frank Bartoni; Nick Russo; that speaks for itself, ladies and gentlemen. He couldn't take the stand.

"Any man who uses that many aliases, and who don't do a legitimate business—it's only a criminal who needs to use aliases. If he were honest, he wouldn't do it. Oh no. Six of them. Now you can see why he didn't take the stand."

True, the indictment was returned against Dominic Cocco alias these other five names. That is a not uncommon practice. But there is an utter absence of proof in the record that this man ever used these other names or any of them. There is no evidence that this man "don't do a legitimate business." Again there was a failure to protect him and his rights were prejudiced. The only purpose of such an argument under the state of the record would be the prejudicing of the jury.

It seems to us that there can be no doubt of the error committed in the respects mentioned, and that this man did not have a fair trial, a trial to which he was entitled under the rules of law prescribed and which should have been understood.

The state contends that these matters, even if erroneous, should be ignored. The proposition is advanced that this defendant is guilty of the crime

charged and that such guilt is proved by unquestioned evidence. The record would so indicate although it is to be observed that the proof of the killing of the deceased was by circumstantial evidence.

But it is not sufficient to say that there is adequate proof of guilt. It does not follow that the defendant was not prejudiced erroneously by the injection into the case of the matters we have discussed. Who can say to what extent the conviction may have been due to incompetent evidence and improper argument? There is no "substantial justice" statute such as applies to civil actions.

Ours is not an arbitrary or autocratic government It is a matter of contract between the state and the individual. The latter is bound to defend, support and maintain the government. The state is bound to guarantee to the individual, life, liberty, and the right to pursue happiness, and the greatest of these is life.

The state prescribes the conditions under which the individual may be deprived of any of these rights. The individual by retaining his citizenship or his residence accepts these limitations upon the governmental guaranties. But in doing so, he reserves the right to insist that the state, in working such deprivation, shall proceed according to the rules prescribed by its agents, the Legislature and the courts. He is entitled by natural right and by compact to safeguard himself against any violation by the state of the rules it has adopted.

To put it succinctly, a man on trial for his life, his most valuable possession, the most sacred of his guaranteed rights, is entitled to have strict compliance with the rules of law, regardless of the probability or even the proof of his guilt.

The judgment is reversed and cause remanded.

*Judgment reversed and cause remanded.*

SHERICK and PUTNAM, JJ., concur in paragraphs 1, 3, 4 and 5 of the syllabus and in the judgment.