THE STATE OF OHIO, APPELLEE, *v.* DAUGHERTY, APPELLANT.

(Nos. CA-7076 and CA-7083—Decided July 13, 1987.)

*W. Scott Gwin,* director of law, *William B. Hoffman,* prosecuting attorney, and *Lawrence P. Chapanar,* for appellee.

*Gutierrez, Mackey & Gwin Co., L.P.A.,* and *John N. Mackey,* for appellant.

PUTMAN, P.J. This is an appeal from a sentence entered following a conviction of driving under the influence, R.C. 4511.19(A)(1), dealing with adverse effect upon the ability to drive.

The state highway patrolman who arrested the accused, Cora R. Daugherty, testified that he did so at 1:50 a.m. on August 25, 1986.

The accused took the stand and testified, *inter alia,* that she was working her way through college by holding down two jobs, and, on the evening preceding the early morning in question, she and Sheila Schmucker had worked at Chi-Chi's Restaurant until 11:15 p.m. and thereafter gone to Sheila's home until 1:20 a.m., drinking one beer. Upon cross-examination of the accused, the prosecuting attorney, under the pretext of asking a question, stated to the jury, in effect, that one Cindy Smith, a manager at Chi-Chi's, had records that showed that the ac-

cused worked the day shift on Sunday, August 24, 1986, and was "gone by 6:30." The accused responded, "I would say that is absolutely not true." Substantially, the record shows that the accused was the last witness to testify, whereupon the defense rested, and the state rested offering no rebuttal, having unsuccessfully asked the court in the presence of the jury "for a continuance to get Cindy Smith into the courtroom."

For the reasons that are set forth hereafter, the accused was entitled to a mistrial at that point and the proceedings were fatally flawed.

But it does not end there. After the guilty verdict was returned, a hearing was held on November 14, 1986, wherein the trial court *sua sponte* subpoenaed the employment records of the accused at Chi-Chi's Restaurant, and they showed that the accused did in fact work at Chi-Chi's Restaurant on August 24, 1986, and that she clocked in at 5:05 p.m. and clocked out at 11:15 p.m. This was exactly as she and Sheila Schmucker had testified at trial and precisely contrary to the untrue testimonial assertions of the prosecuting attorney.

In considering whether or not to vacate the conviction, the trial court heard briefly from the lawyers and then spoke the following:

"BY THE COURT: The Court considered the issue of whether or not the questions asked by the Prosecutor were made in bad faith. I think frankly, first of all, I was sufficiently convinced at the time that he did speak to someone at Chi-Chi's. The fact that someone there may have made a mistake about Renee is not the prosecutor's fault, but I think there was sufficient evidence upon which the jury could decide that the Defendant was guilty beyond a reasonable doubt and that the Prosecutor had proved all the issues beyond a reasonable doubt. The Motion

will be overruled. We'll proceed to the sentencing on the matter. Mr. Mackey, did you want to address the Court concerning sentencing."

In our view, the trial court's analysis misses the mark. See *Chapman* v. *California* (1967), 386 U.S. 18. The trial judge's declaration that he personally was "sufficiently convinced at the time that he [the prosecutor] did speak to someone at Chi-Chi's" re-enforces the likelihood that the jury thought the same thing and believed that the employment records of the accused showed that both she and her witness, Sheila Schmucker, had testified falsely. A more damaging scenario is difficult to imagine.

The court's statement that the evidence was sufficient to prove guilt beyond a reasonable doubt states nothing more than what the state must prove in any case. The suggestion that the prejudice was thereby cured is patently meritless. There is no finding by the trial court that he was convinced beyond a reasonable doubt that the misinformation about the work records could not possibly have contributed to bring about the guilty verdict. See *Chapman, supra.*

We certify in our opinion, upon the whole record, it is unlikely there could have been a guilty verdict but for the prosecutor's effective but untrue testimonial assertion that he knew the record showed that the accused left work at 6:30 p.m. We hold it to be self-evident that the prosecutor must have shared this view, otherwise he would not have intentionally placed his credibility upon the scales of justice. How can he now claim he did not need it to win when he was there looking into the faces of the jury, in the best position to judge what was needed for victory at the time he did it? In the first place, it is highly improper for any lawyer in the trial of any jury case, civil or criminal, to make what amounts to testi-

monial assertions under the pretext that he is merely "asking a question." Secondly, it is unprofessional to put before a jury, under the pretext of asking questions, information that is not in evidence. See 1 ABA Standards for Criminal Justice (2 Ed. 1980 and 1986 Supp.) 3.91, Standard 3-5.9. Cf. DR 7-106(C)(1) of the Code of Professional Responsibility (a lawyer *shall not* state any matter not supported by admissible evidence). As the commentary to Standard 3-5.9 admonishes:

"It is indisputable that at the trial level it is highly improper for a lawyer to refer in colloquy, argument, or other context to factual matter beyond the scope of the evidence or the range of judicial notice. This is true whether the case is being tried to a court or a jury * * *. At the appellate level it is also a grave violation of ethical standards to argue factual matters outside the record." *Id.* at 3-91 to 3.92.

Forty-four years ago our predecessors in this court of appeals reversed an electric chair verdict in the case of *State* v. *Cocco* (1943), 73 Ohio App. 182, 28 O.O. 283, 55 N.E. 2d 430, stating at paragraphs three and four of the syllabus, the following:

"3. It is prejudicially erroneous for the prosecutor in a criminal case to comment upon a notice that evidence would be offered to prove an alibi under Section 13444-20, General Code, when such notice has not been filed with the papers and had not been offered in evidence, and no evidence is proffered of such alibi.

"4. A statement in argument to the jury by the prosecuting attorney that the defendant on trial has used various aliases, where there is no evidence that he had done so, is prejudicially erroneous."

The practice has been condemned uniformly for generations. See *State* v. *Liberatore* (1982), 69 Ohio St. 2d 583, 23 O.O. 3d 489, 433 N.E. 2d 561; *State*

v. *Miner* (1968), 14 Ohio St. 2d 232, 43 O.O. 2d 336, 237 N.E. 2d 400; *State* v. *Smith* (1984), 14 Ohio St. 3d 13, 14 OBR 317, 470 N.E. 2d 883; *People* v. *Perez* (1962), 58 Cal. 2d 229, 23 Cal. Rptr. 569, 373 P. 2d 617, 3 A.L.R. 3d 946; *Sanchez* v. *Stremel* (1964), 95 Ariz. 392, 391 P. 2d 557, 10 A.L.R. 3d 1324; Annotation (1936), 100 A.L.R. 1067, 1070.

The fact that the trial judge, concerned enough about the issues that he *sua sponte* subpoenaed the witnesses, did not upon learning the truth set the verdict aside is, to say the least, disquieting.

In summary, we consider it to be fundamental that:

1. It is grounds for a mistrial when a lawyer in a jury case rests his case, having failed to adduce any admissible evidence of information harmful to his adversary that he has, in the presence of the jury, asserted to be true in a question to and that was denied by an adverse witness where the information is not otherwise in evidence.

2. It is professional misconduct where the information is put before the jury in such form that it appears that the lawyer is putting his own personal credibility into the balance for the jury to consider.

3. Accordingly, where a trial lawyer, under the pretext of putting a question to an adverse witness upon cross-examination, actually asserts to a jury the truth of unproved information substantially harmful to his adversary, the denial by the witness requires the lawyer to produce proper proof thereof. His failure to do so entitles his adversary to a mistrial.

4. The constitutional right to a fair trial in criminal cases makes the above rules applicable to lawyers engaged in a public prosecution. See *Berger* v. *United States* (1935), 295 U.S. 78.

In the case at bar, the prosecution "rubbed it in" in final argument, arguing the credibility of the accused and challenging the jury to consider "of what time she did work that day." The record contains other examples of prosecutorial misconduct, probably the result of inexperience, but condoned by the trial judge who was not inexperienced.

Finally, we have considered the entire record of this case in the light of the precedent of *United States* v. *Dinitz* (1976), 424 U.S. 600, and conclude that this accused has been sufficiently harassed by unlawful government procedure as to invoke the prohibition against unwarranted successive criminal prosecutions within the meaning of the Double Jeopardy Clauses of the federal and state Constitutions.

The accused has gone through a trial that might have resulted in an acquittal, a post-trial evidentiary hearing in which a learned trial judge should have declared a mistrial but did not, and has been further harassed by the expense of an appeal when both the prosecuting attorney and the trial judge each, upon learning the truth, should have acknowledged the error.

We have thoughtfully considered whether or not to remand this cause to the Canton Municipal Court with instructions to consider whether or not re-trial is barred because, in most cases, a proper resolution of that issue might possibly depend upon facts surrounding the prosecutor's asking of the questions that are not contained in this appellate record. However, the prosecutor has had two separate opportunities to make his record and has not done so. Upon consideration of the motion for new trial and/or acquittal, the trial court subpoenaed a witness *sua sponte.* The prosecutor offered nothing.

Susan Hastler testified that she was the office manager at Chi-Chi's Restaurant, and maker and keeper of the payroll vouchers, work records and time clock cards; that she received no phone call November 7 from any person about these records; that the time card showed the accused clocked in at 5:05 p.m. on August 24, 1986, and out at 11:15 p.m.; and that Sheila Schmucker was also an employee and on the same day, August 24, 1986, clocked in at 4:19 p.m. and out at 11:04 p.m.

The prosecutor did not call Cindy Smith, the person to whom he claimed to have talked, and offered nothing of an evidentiary nature to justify or document his claim of good faith.

The trial court accepted the prosecutor's claim of good faith absent any record support for it. There were two opportunities for the state to make its record on this issue: at trial and at the post-trial hearing. It did not do so. In our opinion, the Constitution precludes this accused from being harassed further.

For the foregoing reasons, the second and third assignments of error are sustained, the judgment of the Canton Municipal Court is reversed, and a final judgment of acquittal entered.

*Judgment reversed*
*and appellant discharged.*

WISE and TURPIN, JJ., concur.