The STATE of Ohio, Appellee,

v.

HUNT, Appellant.

[Cite as *State v. Hunt* (1994), 97 Ohio App.3d 372.]

Court of Appeals of Ohio,
Franklin County.

No. 94APA02–264.

Decided Sept. 29, 1994.

*Michael Miller,* Franklin County Prosecuting Attorney, and *Katherine J. Press,* Assistant Prosecuting Attorney, for appellee.

*Judith M. Stevenson,* Franklin County Public Defender, and *John W. Keeling,* Assistant Public Defender, for appellant.

JOHN C. YOUNG, Judge.

Norman S. Hunt, appellant, was charged with two counts of felonious assault with firearm specifications. Both counts alleged that on June 30, 1993, appellant caused or attempted to cause physical harm to Adrian Wilson with a firearm. Following a jury trial, appellant was convicted on the second count and acquitted as to the first count. The trial court sentenced appellant to a prison term of five to fifteen years with an additional three years of incarceration for the firearm specification.

Thereafter, appellant appealed to this court and set forth the following assignment of error:

"The defendant was deprived of a fair trial and due process of law when the state improperly elicited other act and character evidence and improperly attacked the credibility of the defendant and his witness."

This court agrees with the assertions raised by appellant in the instant appeal and the judgment of the Franklin County Court of Common Pleas is reversed and this matter is remanded. A lengthy recitation of the facts as presented at trial is unnecessary. Adrian Wilson was shot on June 30, 1993; however, the testimony at trial presented different accounts of how he was shot. The jury had to determine this crucial fact based upon a determination of the credibility of the witnesses. Appellant argues that the actions of the prosecuting attorney unfairly tipped the scales against him.

The Ohio Supreme Court set forth the law concerning prosecutorial misconduct in *State v. Keenan* (1993), 66 Ohio St.3d 402, 406, 613 N.E.2d 203, 207, as follows:

" * * * The prosecutor carries into court the prestige of 'the representative * * * of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest * * * is not that it shall win a case, but that justice shall be done. * * * Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.' *Berger v. United States* (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321."

At the same time, this court must remember that the conduct of a prosecuting attorney during the trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 24, 514 N.E.2d 394, 400.

This court notes that in at least four instances the assistant prosecuting attorney elicited, primarily through her own direct statements, testimony from witnesses which was improper. On numerous occasions, the prosecuting attorney posed leading questions to the state's witnesses. Upon objection, three of those objections to the prosecutor's actions were sustained by the trial court. The prosecutor asked the following question of one of the state's own witnesses:

"Q. (by Ms. Moore) You indicated that you were threatened by the defendant and that's why you were fearful to come to court, is that correct?

"A. It was not actually by him, it was by his wife.

"Mr. Cowell: Your honor, once again I renew my objection, none of this has anything to do with what the defendant said.

"The court: Yes. It's not something the defendant said so it cannot be heard. The objection is sustained."

The objection was sustained. The prosecutor elicited from Adrian Wilson that he was currently living in Lorain, Ohio because he was afraid that someone else was going to try to kill him. This objection was also sustained. Third, the

prosecutor elicited that another of the state's witnesses was afraid to testify in the present case. That objection was also sustained.

The sustaining of these objections implies that the suggestions raised thereby are erased from the minds of the jurors. While common sense dictates that this is not always the case, nonetheless, standing alone, these questions do not support reversal. However, during cross-examination of appellant, the prosecutor accused appellant of taking gasoline to Wilson's house and threatening to blow up the place. Defense counsel objected to this question and the objection was overruled when the prosecutor stated that she had a good-faith basis to ask the question. At no time did the prosecutor put forth any extrinsic evidence to establish this fact.

In *State v. Gillard* (1988), 40 Ohio St.3d 226, 533 N.E.2d 272, the Ohio Supreme Court found that a cross-examiner may ask a question if the examiner has a good-faith belief that a factual predicate for the question exists. The court in *Gillard* cited *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, wherein it stated that "[t]he attempt to communicate by innuendo through the questioning of witnesses when the questioner has no evidence to support the innuendo is improper." *Id.* at 119, 5 O.O.3d at 102, 364 N.E.2d at 1368.

The *Gillard* court went on to explain the evolution of the good-faith-basis test which prevails under such circumstances. In *Gillard,* the court concluded that, inasmuch as the prosecutor's good-faith basis for asking the questions was never challenged, the court presumed that she had one. This court made a similar finding in *State v. Gentry* (Nov. 19, 1991), Franklin App. No. 91AP–370, unreported, 1991 WL 249518. Because the defendant did not challenge the prosecutor's good-faith basis for asking the questions at issue, this court presumed that a good-faith basis existed. However, a good-faith basis for the questions does not end the inquiry in this case.

In the present case, the prosecuting attorney presented damaging facts to the jury under the guise of asking appellant a question. In *State v. Daugherty* (1987), 41 Ohio App.3d 91, 534 N.E.2d 888, the Stark County Court of Appeals found this method of eliciting evidence to be highly improper and unprofessional. Specifically, the court stated as follows:

"[I]t is highly improper for any lawyer in the trial of any jury case, civil or criminal, to make what amounts to testimonial assertions under the pretext that he is merely 'asking a question.' Secondly, it is unprofessional to put before a jury, under the pretext of asking questions, information that is not in evidence. See 1 ABA Standards for Criminal Justice (2 Ed.1980 and 1986 Supp.) 3.91, Standard 3–5.9. Cf. DR 7–106(C)(1) of the Code of Professional Responsibility (a lawyer *shall not* state any matter not supported by admissible evidence). As the commentary to Standard 3–5.9 admonishes:

" 'It is indisputable that at the trial level it is highly improper for a lawyer to refer in colloquy, argument, or other context to factual matter beyond the scope of the evidence or the range of judicial notice. This is true whether the case is being tried to a court or a jury * * *.' " (Emphasis *sic.*) *Id.* at 92–93, 534 N.E.2d at 890.

Granted, defense counsel did not press the state to present its good-faith basis for asking this question nor did defense counsel move for a mistrial. However, that does not change the nature of the question asked and it does not render proper a question which was improper. By virtue of the question, the prosecution in effect testified to events without bearing the usual burden of producing evidence of those events.

· Further, the questions posed went to the very heart of the case because the entire case hinged on the credibility of the witnesses. There simply was no extrinsic evidence to establish who shot Wilson. Because the bullet merely grazed Wilson's side, no bullet was recovered which could be tied to any weapon owned by appellant. In fact, no gun was recovered from appellant's possession. Because appellant was arrested several days later, no residue was on his hands which may have indicated that he had even fired a gun. The entire case turned on the credibility of the witnesses and who the jurors believed.

In the present case, the questions asked by the prosecuting attorney did affect a substantial right of appellant and, as a practical matter, the cumulative effects of the prejudicial questions posed by the prosecuting attorney deprived appellant of his right to a fair trial.

On several occasions, this court has had cause to comment on the conduct of this particular assistant prosecuting attorney amidst allegations of prosecutorial misconduct. In *State v. Littlejohn* (Oct. 15, 1992), Franklin App. No. 92AP–259, unreported, 1992 WL 292353, this prosecutor brought into questioning a prior felony record at a point in time when defendant's character was not at issue.

In *State v. Hambel* (July 14, 1994), Franklin App. No. 93APA10–1372, unreported, 1994 WL 371348, prosecutorial misconduct was alleged regarding the procurement of a supplemental indictment which lacked any evidentiary support as to a key element in order to coerce a plea in the original indictment. Again, this same assistant prosecutor was involved and her actions strongly criticized.

In *State v. Taniguchi* (1994), 96 Ohio App.3d 592, 645 N.E.2d 794, the majority opinion criticized this same assistant prosecuting attorney for her characterization of the defendant as "smirking" and her urging the jury to wipe the smirk off of the defendant's face. While in that case the majority opinion concluded that but for the prosecutor's comments the result of the trial would not have been different, the same cannot be said in a case such as this where the crux of the

case is the credibility of the witnesses. The conduct was prejudicial and it deprived appellant of a fair trial.

A certain pattern of conduct seems to have emerged concerning this assistant prosecuting attorney. Zealous prosecution of criminal cases is expected and admired; however, continually crossing the line corrupts our system of justice and will not be tolerated. We refer the prosecutor to DR 7–103 and EC 7–13.

Appellant's sole assignment of error is sustained.

Based on the foregoing, appellant's assignment of error is sustained and the judgment of the Franklin County Court of Common Pleas is reversed. This matter is remanded to the Franklin County Court of Common Pleas for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BOWMAN and PEGGY BRYANT, JJ., concur.