DECISION
On February 5, 1999, appellant, Lance E. Curry, was indicted on nine counts, arising from two incidents which occurred on January 28, 1999. The first incident occurred at approximately 7:00 p.m., when Linda Higgins was carrying groceries to her car in the Big Bear parking lot in the Great Southern Shopping Center. As she unlocked her car, a man approached her, chased her, threw her to the ground and took her purse. He jumped into a small white car but the driver of the car stalled the engine. Higgins grabbed the lowered window and yelled at the men to return her purse. The car started to leave. Sheila Lowe was in the Big Bear parking lot and heard Higgins yell. Lowe saw a man enter a white Ford Escort and she also saw the driver of the car. Lowe gave the police a description of the men and the car, as well as the license plate number of the car.
Terry Anderson testified that he was the victim of a robbery at approximately 8:30 that same evening. He was taking out the trash and collecting his mail when two young men approached him. One had a gun and asked for his wallet. When he answered that he did not have a wallet, the gunman chambered a round and again yelled for his wallet. The other man went through Anderson's pockets and took approximately $250 and his jacket. Anderson testified that, as the men drove away in a white Ford Escort, he was able to see part of the license number.
After hearing the reports on the radio, Police Officer Ronda Grizzell stopped a white Ford Escort with the reported license plate number. The two people in the car ran and appellant was caught. Later that evening, the police telephoned Sheila Lowe at home and asked if she could make an identification. A police officer drove her to Koebel Road where appellant was standing, handcuffed, by the side of the road. A light was directed on appellant and Lowe identified appellant as the driver of the car in the Big Bear parking lot. A police officer also drove Anderson to the site and he was eighty percent sure that appellant was the gunman. Anderson recovered his jacket from inside the car.
Appellant filed a motion to suppress the identifications. The only witness to testify was Sheila Lowe, the eyewitness to the first robbery. The trial court overruled the motion to suppress and a defense motion to sever. The prosecution entered a nolle prosequi as to all the counts except Count 1, robbery, and Count 7, aggravated robbery.
After a jury trial, appellant was found guilty of both counts and the firearm specification in Count 7. The trial court sentenced appellant to consecutive terms of eight, ten and three years. Appellant filed a notice of appeal and raises the following assignments of error:
FIRST ASSIGNMENT OF ERROR
The trial court erred in overruling Appellant's motion to suppress identification as the identification procedure was to unnecessarily suggestive and conducive to irreparable mistake as to deny Appellant due process of law.
SECOND ASSIGNMENT OF ERROR
Appellant was denied his right to a fair trial as a result of prosecutorial misconduct.
THIRD ASSIGNMENT OF ERROR
The trial court's imposition of the maximum allowable sentence of imprisonment violated the presumption set forth in R.C. 2929.14(C).
By the first assignment of error, appellant contends that the trial court erred in overruling his motion to suppress identification, as the identification procedure was unnecessarily suggestive and denied appellant his due process of law. Upon appellate review of a motion to suppress, while this court is "bound to accept the trial court's findings of fact which are supported by competent, credible evidence, we must independently determine as a matter of law, without deference to the trial court's conclusions, whether the findings of fact satisfy the appropriate legal standard." State v. Goins (Oct. 22, 1998), Franklin App. No. 98AP-266, unreported, at 2.
The testimony during the suppression hearing consisted of Sheila Lowe's testimony. She testified that she was walking into the store when she heard Linda Higgins scream. She was able to see appellant for approximately fifteen to twenty seconds when he was trying to escape. She gave the following description to the police officer: "I could see the profile, like the jaw line, the hairline, and he was a thinner man because he leaned forward in the light." (Tr. 23.) She also told the police that the driver was African-American and he had short hair. She was never shown a photo array or a lineup. Approximately two hours after the incident, a police officer drove her to Koebel Road to identify appellant. On the way, the officer told Lowe that appellant had been involved in another robbery on Alum Creek Drive. She had the impression that the person she was to identify was the driver of the car. Lowe testified:
 Q. All right. Did Mr. [Officer] Whitt say anything else to you about the offense for which well, this individual that they had caught, Mr. Curry, was a suspect in did he tell you anything else about that?
A. No, just that they had him over on Koebel.
 Q. Was it your impression that when you were going over there that they had the person who had been involved in your robbery, in the Big Bear robbery?
A. Yes.
 Q. That's because they had indicated to you, well, hey, we believe he's also involved in another robbery?
A. Yes.
 Q. So that was your understanding, that they wouldn't have brought you out to this scene unless they had the right guy?
A. Well, for me to I.D. him, yes. [Tr. 18-19.]
When they arrived, appellant was the only suspect and he was standing by the side of the road in handcuffs. The police directed a light on appellant and Lowe identified appellant as the driver of the car in the Big Bear parking lot. She was positive that appellant was the driver. When appellant's counsel attempted to question Lowe concerning the conditions under which she had observed appellant, the trial court would not permit such questioning. The trial court stated as follows:
 THE COURT: I guess. I want to remind you, Mr. Pierce, that there's two levels that we need to discuss regarding identification which is often misunderstood.
 First of all, it's the constitutional issue. That's what we are here to talk about, only that. Not the weight of the evidence, but whether or not there's something that violates the constitution about the impermissible suggestion by the police.
 Now if this lady made the identification in the dark, it's not relevant to this hearing. If this lady cannot see, it's not relevant to this hearing. If this lady did not get a good look at this man, it's not relevant to this hearing. None of those things are relevant.
 What we are here to discuss today is whether or not the police used some tactic or some method to suggest to her or that was overly suggestive to her as to who she should identify and, thereby, violate the Constitutional rights of the defendant.
 Now I want to stick to that because I got about 27 cases today and I'm not going to sit here and listen to whether or not the lights were bright or the lights were dim. That's weight, not admissibility. Two separate issues that lawyers should know about. About 95 percent of them come in here and don't know the difference.
 Now did you make this identification by seeing the defendant in the parking lot?
 THE WITNESS: I did initially see him in the parking lot.
 THE COURT: Then how was the later identification conducted? How did you tell the police you knew who it was?
 THE WITNESS: I was contacted that they had caught him and wanted to know if I would come and identify him. And I went and they had him on the side of the road and I identified him.
THE COURT: Is this the same night?
THE WITNESS: Yes.
THE COURT: About how much time elapsed between
 THE WITNESS: It was about 9:30. So it was about an hour and a half or so.
 THE COURT: At the time that you identified him on the side of the road, was he like in a cruiser?
THE WITNESS: No, they had him standing outside.
 THE COURT: Let's talk about that. That's what we are here about. We are not here about the size of the parking lot, the lights in the parking lot, any of that stuff. We are here to determine whether or not there was a suggestion of identification by the police that would cause her to identify the wrong person.
 MR. PIERCE: Your Honor, if I could just say something. I certainly don't mean no disrespect to the court, nor am I trying to delay matters. In Neil versus Biggers, one [of] the things noted was the opportunity of the individual to witness the offense, and that was my purpose inquiring as to things she saw, the darkness and that kind of thing.
 THE COURT: I understand. Let's talk about the constitutional issue, confrontation. You have a confrontation. Let's talk about it.
BY MR. PIERCE:
 Q. What was the description that you provided to the police when they came to the scene there at Big Bear? What can you tell us specifically the description?
MS. REULBACH: Objection.
THE COURT: Sustained.
MR. PIERCE: Your Honor, I think
 THE COURT: Mr. Pierce, really, I'm not trying to be difficult with you. But you know, let's get find out what happened at the cruiser. That's what we need to talk about. Okay?
 She identified this guy. And what we are here to talk about is under what circumstances did she identify him. So let's get going. [Tr. 10-14.]
Appellant argues that the trial court erred in two respects. First, the trial court prevented defense counsel from questioning the witness concerning the circumstances surrounding the witness' observation of the robbery and, therefore, the trial court was unable to assess the reliability of the identification. Second, the trial court erred in overruling the motion to suppress because the manner in which the identification was conducted was unduly suggestive.
The Fifth and Fourteenth Amendments to the United States Constitution prohibit the admission of unreliable identification testimony derived from suggestive identification procedures; however, an impermissibly suggestive procedure alone does not require exclusion but, rather, the identification process must be so unreliable under the circumstances as to create a substantial likelihood of irreparable misidentification before an identification will be excluded. State v. Brust (Mar. 28, 2000), Franklin App. No. 99AP-509, unreported. In Neil v. Biggers
(1972), 409 U.S. 188, 199, the United States Supreme Court held that, even though a show-up procedure is suggestive, the identification may be reliable under the totality of the circumstances. In Neil, the court set forth the standard for admissibility of testimony concerning an out-of-court identification by identifying factors that should be considered in determining the likelihood of misidentification, as follows: the opportunity of the witness to view the criminal at the time of the crime; the witness' degree of attention; the accuracy of the witness; prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. Thus, "[i]dentifications made subsequent to an impermissibly suggestive procedure are admissible where the identification itself is nevertheless deemed reliable. `The central question is whether under the totality of the circumstances the identification is reliable even though the confrontation procedure was suggestive.'"State v. Garner (1995), 74 Ohio St.3d 49, 61, certiorari denied (1996), 517 U.S. 1147, quoting State v. Parker (1990), 53 Ohio St.3d 82,87.
In this case, the police officer informed Lowe that the suspect had been involved in another robbery that evening. Even though the identification was made within a few hours of the crime, it was a show-up identification involving the exhibition of just one individual to an eyewitness as opposed to a lineup, and appellant was handcuffed with a light directed upon him.
Lowe, the eyewitness, testified that she saw the perpetrator's face for fifteen to twenty seconds but she only saw his profile, and she was able to describe his clothing as dark. However, the trial court refused to allow defense counsel to cross-examine Lowe concerning the circumstances surrounding her observation of the robbery and, thus, the trial court was unable to assess the reliability of the identification. Also, while the eyewitness was en route to the identification, she was told that the police believed appellant had committed the Big Bear robbery and had been involved in another robbery that evening.
While a show-up identification procedure may be permissible; here, the lack of opportunity to cross-examine Lowe, coupled with the fact that the police informed the eyewitness that appellant had been involved in another robbery and conveyed the impression he was involved in the Big Bear robbery, created an impermissibly suggestive procedure. The trial court's refusal to allow defense counsel to question the witness concerning the circumstances surrounding the witness' observation of the robbery makes a complete application of the Neil factors impossible and the trial court could not determine whether a substantial likelihood of irreparable misidentification occurred. The trial court erred in not fully considering appellant's motion to suppress as pertaining to Lowe and the first robbery. Appellee argues that we may consider the testimony presented at trial to determine whether the motion to suppress should have been granted; however, this court confines itself to a review of the evidence presented at the suppression hearing when reviewing a trial court's ruling on a motion to suppress. State v. Mease (Mar. 14, 1996), Franklin App. No. 95APA05-614, unreported.
Since there was no testimony concerning the second robbery and the defendant bears the burden to show the court that the identification procedure was unnecessarily suggestive, the trial court was correct in denying the motion to suppress as to the second robbery. State v. Thompson (1998), 127 Ohio App.3d 511,519, citing State v. Sims (1984), 13 Ohio App.3d 287. Appellant's first assignment of error is well-taken as to the first robbery and not well-taken as to the second robbery.
Given our disposition of appellant's first assignment of error, the second and third assignments of error are overruled as moot as concerning the first robbery. However, we shall address those assignments of error as pertaining to the second robbery.
By the second assignment of error, appellant contends that he was denied his right to a fair trial as a result of prosecutorial misconduct. Appellant argues that the prosecutor improperly injected information into the record and then used such to impeach appellant's credibility. During the cross-examination of appellant, the prosecutor asked appellant if he had agreed to talk to Detective Nickie Miller and he replied he had talked with a detective. Then the following exchange occurred:
Q. Had about a 15-minute conversation with her?
A. Yes.
 Q. Isn't it true that you told her that you had been in the car about 45 minutes?
A. No.
Q. You didn't tell her that?
A. No.
Q. She just made that up?
A. I don't know. She did something.
 Q. You deny that you had been involved in any robberies?
A. Yes.
 Q. That you had been in the car about 45 minutes when the police stopped you?
 A. She made that up or something. I ain't tell her that.
Q. You didn't know her before that day; did you?
A. No.
 Q. She didn't have anything to do with this juvenile arrest warrant you were worried about?
A. No.
Q. So she didn't have any hard feelings about you?
A. No.
Q. She didn't have any reason to lie about you?
A. No.
[Tr. 265-266.]
Despite this questioning, and the denial by appellant, Detective Miller did not testify concerning appellant's statement. Thus, the questioning concerned evidence outside of the record.
The prosecution failed to present an impeaching witness or documentary evidence to demonstrate that the prior statement was ever made. In Dorsten v. Lawrence (1969), 20 Ohio App.2d 297,305, the court stated:
 Prior inconsistent statements of a witness must, to be effective in impeachment of such witness's present testimony, be brought before the court and jury in some appropriate manner * * * and, after a proper foundation for impeachment has been laid for the introduction of inconsistent statements of a witness, it becomes necessary to prove them. * * * The absence of such impeaching testimony from an impeaching witness, or from some documentary evidence properly admitted, gives rise to no proof that the witness, sought to be impeached, ever made the contradictory or inconsistent statement; and, when this is followed at the close of the evidence and final arguments to the jury by the trial court's general instructions to the jury, as it was in the present case, concerning the rules pertaining to determining credibility and impeachment of witnesses, the prejudicial nature of the error incident to attempted impeachment of a witness is compounded and made much more serious.
Attorneys should not present information to a jury that is not evidence. State v. Daugherty (1987), 41 Ohio App.3d 91, 93. In this case, the forty-five-minute time period is important as to whether appellant was present during the second robbery because the second robbery occurred at approximately 8:30 p.m., and appellant was arrested at 8:58 p.m. Appellant testified that he was picked up by a friend he saw driving on South High Street and that he had only been in the car fifteen minutes.
In this case, the defense attorney failed to object to the questions. Thus, we must determine whether the error amounts to plain error. Crim.R. 52(B) allows a reviewing court to reverse for error which affects substantial rights but was not preserved as error for appeal. Even though the application of plain error is to be taken with the utmost caution, it is sometimes necessary, under exceptional circumstances, in order to prevent a miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. "Plain error is found where, but for the error, the outcome of the trial would have been otherwise." Statev. Franklin (1991), 62 Ohio St.3d 118, 128, certiorari denied (1992), 504 U.S. 960.
In this case, the prosecutorial misconduct does constitute plain error. The prosecutor repeatedly asked questions based on a conversation between appellant and Detective Miller, for which there was no evidence in the record. The length of time appellant was in the car was a critical fact. If there was overwhelming evidence of appellant's guilt in this case, we would find differently. But, here, Anderson was only eighty percent sure that appellant was the gunman. Also, Anderson heard the police chase of appellant on the police radio while a police officer was interviewing him before he went to identify appellant. Although Anderson received his jacket and gloves from the white Ford Escort, that fact does not necessarily indicate that appellant was involved, but, merely, that someone in the car was involved. While Anderson testified he recognized the hooded sweatshirt appellant was wearing as one like the gunman wore, Anderson was only eighty percent positive about the identification. Given this evidence, we find the prosecutor's actions constituted plain error. Appellant's second assignment of error is well-taken as to the second robbery.
By the third assignment of error, appellant contends that the trial court's imposition of the maximum allowable sentence of imprisonment violated the presumption set forth in R.C. 2929.14(C). By our findings which require reversal of the convictions, the third assignment of error is overruled as moot concerning the second robbery as well.
For the forgoing reasons, appellant's first assignment of error is sustained as to the first robbery and overruled as to the second robbery, the second assignment of error is overruled as moot concerning the first robbery and sustained as to the second robbery, and the third assignment of error is overruled as moot concerning both robberies, and the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this decision.
BROWN and KENNEDY, JJ., concur.