OPINION
On the evening of April 19, 2000, an incident occurred at the Delphi Harrison plant between two employees, Defendant-Appellant Harold Evans and Daniel Loftis. As a result of the incident, Loftis was taken to the hospital, and Evans was ultimately indicted for assault. Following a jury trial, Evans was found guilty as charged and sentenced accordingly. He now appeals his conviction, raising the following assignments of error:
 I. The trial court committed prejudicial error by wrongfully denying Appellant's motion in limine, and overruling his objections at trial, to exclude evidence of alcohol consumption before the alleged incident despite that such evidence was irrelevant and prejudicial.
 II. The trial court committed prejudicial error by failing to allow Appellant's counsel to pursue a line of questioning regarding complaining witness' hiring of a civil attorney pursuant to Ohio Evid.R. 611(B). Failure to do so prevented Appellant from impeaching the credibility and motive of the complaining witness.
 III. The trial court committed prejudicial error by allowing prosecution to present evidence by asking Appellant highly prejudicial questions without having a good-faith basis to ask the question or without having any witness or other evidence to corroborate the question.
 IV. The trial court committed prejudicial error by failing to submit to the jury all of Appellant's proposed jury instructions. The omitted instructions were appropriate, consistent more specific and more specific [sic] and concise for the jury to understand the issues of law to allow and [sic] informed decision.
 V. The jury's verdict was against the manifest weight of the evidence because the Appellant proved by a preponderance of the evidence that he acted in self defense. Further, the prosecution did not prove Appellant's guilty, as to each and every element of assault beyond a reasonable doubt.
 I
In his first assignment of error, Evans challenges the court's decision to allow testimony regarding his drinking on the night of the incident. Several individuals who were close to Evans that night testified that they smelled alcohol on his breath.
Evans himself testified that he had two beers before going into work that evening. In his brief, Evans relies on State v. Nolan (1992),78 Ohio App.3d 564, for the proposition that testimony regarding alcohol consumption constitutes improper impeachment under Evid.R. 608. We disagree.
In Nolan, the prosecutor questioned a key witness for the defense regarding her epilepsy and drinking problem. The court found this to violate Evid.R. 608 partially because there was no evidence that the witness was drinking on the day in question. Id. at 569-70. Nolan did not find that evidence of alcohol consumption at the time of the incident violates Evid.R. 608. Instead, Nolan properly interpreted this rule to limit opinion and reputation evidence of character, not actual events occurring when the crime is committed.
Our only inquiry to determine if evidence of Evans' alcohol consumption is admissible would be relevance. Provided the probative value of the evidence is not outweighed by the prejudicial effect, the evidence is admissible. Evid.R. 403(A). Evans was accused of assaulting Loftis while involved in a heated discussion with Scottie Rowe. The argument centered around Evans' accusations that both Rowe and Loftis were not doing their job. Testimony that Evans may have been intoxicated at the time of the incident is relevant in understanding how the events unfolded that evening. Accordingly, Evans' first assignment of error is overruled.
 II
Evans next argues that the trial court erred in prohibiting cross examination of Loftis regarding his retention of a civil attorney. Evid.R. 611(B) provides that "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility." A witness' bias derived from a potential pecuniary interest in the outcome of the criminal proceeding certainly affects credibility under Evid.R. 611(B). State v. Ferguson (1983), 5 Ohio St.3d 160, 165. Therefore, a defendant should be permitted to elicit testimony regarding a contemplated civil action by the complaining witness. Id. at 166. This rule also applies to questions regarding consultation with or hiring of an attorney. Id.
Nevertheless, the scope of cross examination is within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. Id. An abuse of discretion implies the court's attitude was unreasonable, arbitrary or capricious. State v. Moreland (1990), 50 Ohio St.3d 258, 61. The Ferguson court found that the trial court abused its discretion by not permitting the defendant to cross examine on this subject. The holding is expressed in the following paragraphs from pages 166-167:
 In the instant cause, the trial court prevented the jury from considering whether the financial motivation for the victim's testimony rendered her testimony not credible. It is true that generally the scope of cross-examination is within the sound discretion of the trial judge. [Footnote omitted.] However, inasmuch as the victim's testimony was vital to the state's case and to appellee's defense, we believe the trial court abused its discretion in refusing to allow evidence of the contemplated civil suit. [Footnote omitted.]
 Consequently, we hold that accused is permitted to cross-examine the prosecuting witness as to the witness' pending or contemplated civil action against the accused, in order to demonstrate any possible bias or prejudice arising out of the witness' financial interest in the outcome of the prosecution.
Accordingly, we find that the trial court did abuse its discretion, and we sustain Evans' second assignment of error.
 III
In Evans' third assignment of error, he challenges the propriety of a question asked of him on cross examination. The exchange proceeded as follows:
 Q. Is it true that you told Mr. Profit that had a supervisor, and I quote, `Had a supervisor not come in, I'd have killed him.".
A. That's not true.
MR. BRANNON: I'm gonna object and. . .
COURT: Overruled.
 MR. BRANNON: . . . Unless he can produce something that says that.
COURT: Overruled. This is cross-examination.
Although Mr. Profit was allegedly subpoenaed, he did not show up at the trial to testify. However, Mr. Oldham, the other individual in the meeting with Evans and Mr. Profit, testified that Evans never made that statement. On further cross examination of Mr. Oldham, the prosecutor pointed out that Mr. Profit and Evans may have been together before Mr. Oldham joined them, and the statement could have been made then. At this point in Mr. Oldham's testimony, Evans moved for a mistrial and was denied. The state never produced any evidence demonstrating Evans made the statement.
The Ohio Supreme Court has held that a witness may be asked a question on cross examination "if the examiner has a good-faith belief that a factual predicate for the question exists." State v. Gillard (1988),40 Ohio St.3d 226, paragraph two of the syllabus. The contrary, of course, makes it improper for an examiner to ask a question in bad faith, in other words, a question which puts information before a jury that is not supported by the evidence. State v. Smidi (1993),88 Ohio App.3d 177, 183. In fact:
 [i]t is grounds for a mistrial when a lawyer in a jury case rests his case, having failed to adduce any admissible evidence of information harmful to his adversary that he has, in the presence of the jury, asserted to be true in a question and that was denied by an adverse witness where the information is not otherwise in evidence.
State v. Daugherty (1987), 41 Ohio App.3d 91, 93. This particularly applies to prosecutors in light of a defendant's right to a fair trial. Id.
In Daugherty, the prosecutor posed a question to the defendant stating that employment records would reveal the defendant and her witness left work much earlier than they had both testified. Id. at 91. Thereafter, the prosecutor did not present proof of these records, nor any employer who could verify the statement. Id. at 92. After the defendant was convicted, the trial court sua sponte subpoenaed the employment records to find out that in fact the defendant and her witness had told the truth. During this hearing, the trial court stated that it was sufficiently convinced the prosecutor really had spoken to the girls' employer. The fact that the trial court believed this lends credence to the expectation that the jury also believed it, thereby placing great emphasis on the "testimony" of the prosecutor. The Daugherty appellate court found this to be sufficiently damaging to warrant a mistrial, and granted same. Id.
Similarly, in State v. Hunt, the prosecutor presented very damaging facts to the jury under the guise of asking a question on cross examination. (1994), 97 Ohio App.3d 372, 375. The prosecutor accused the appellant of taking gasoline to the victim's home and threatening to blow it up, which Hunt denied. The objection was overruled because the prosecutor claimed to have a good faith basis to ask the question. However, no evidence was submitted to verify this statement. Id. As a result, the Hunt court found this question to be prejudicial to the appellant and reversed his conviction. Id. at 376.
We find the question asked by the prosecutor to be equally damaging to Evans. The prosecutor asked this question of the defendant near the end of the trial, likely knowing that Preston would not testify. Therefore, he had no good faith basis to ask the question. On appeal, the state argues that the statement could be found in the Delphi incident report. However, this report is not part of the record, and thus for our purposes, does not exist. Accordingly, we find that the question asked by the prosecutor constitutes prejudicial error and is grounds for reversal. Evans' third assignment of error is sustained.
 IV
In his fourth assignment of error, Evans contends that the trial court erred in not giving four of his proposed jury instructions. While a trial court is required to include the substance of proposed jury instructions if they are relevant and accurate, the instructions are proper if they adequately "outline the issues, state the applicable principles of law, and clarify the jury's role in the case." State v. Rockwell (1992),80 Ohio App.3d 157, 169, citing Bahm v. Pittsburgh Lake Erie Rd. Co. (1966), 6 Ohio St.2d 192, 194, and State v. Guster (1981),66 Ohio St.2d 266, 268. Moreover, "[a] reviewing court will not reverse a conviction in a criminal case due to jury instructions unless it is found that the jury instructions amount to prejudicial error." Id., citing State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
Furthermore, the record does not reflect that Evans objected during the trial to any of the challenged jury instructions. After they were read, the court called counsel to side bar and specifically asked if there were any objections to the instructions as read. These particular instructions were not mentioned. As a result, Evans has waived all but plain error pertaining to these jury instructions. State v. Smith (2000),89 Ohio St.3d 323, 332. Consequently, he has the burden to show that but for the omission of these instructions, the outcome of the trial would clearly have been different. State v. Lindsey (2000), 87 Ohio St.3d 479,482.
Evans objects to the court's failure to include four proposed instructions which we will discuss separately. The first proposed instruction was as follows:
 The State charges that the act of Harold Evans caused physical harm to Donnie [sic] Loftis. Cause is an essential element of the offense. Cause is an act, which in a natural and continuous sequence directly produces physical harm, without which it would not have occurred. Cause does not exist if Donnie [sic] Loftis created the circumstances that caused his physical harm or any other conduct or intervening act created circumstances that were a substantial factor of the cause of injury.
The bolded portion was the only part excluded by the court. Evans cites O.J.I. 409.55 to support this proposed instruction. First, O.J.I. 409.56 actually contains the intervening cause language, but it does not express the proposition included in the above text. Instead, it states that if defendant's act was one cause, then the existence of other causes is not a defense. Consequently, Evans' proposed instruction above is not correct, and likely would have confused the jury. The trial court did not err in refusing to read proposed instruction number five.
Proposed instruction number twelve read as follows:
 A preponderance of the evidence is the greater weight of the evidence; that is, evidence that you believe because it outweighs or overbalances in your minds the evidence opposed to it. A preponderance means evidence that is more probable, more persuasive, or of greater probative value. It is the quality of the evidence that must be weighed. Quality may or may not be identical with the greater number of witnesses. In determining whether or not self-defense has been proven by a preponderance of the evidence, you should consider all the evidence bearing upon self-defense regardless of who produced it. If the weight of the evidence is equally balanced or if you are unable to determine which side of the defense has the preponderance, then Harold Evans has not established self-defense. If Harold Evans fails to establish the defense of self-defense, the State must prove to you beyond a reasonable doubt all the elements of the crime charged or any lesser offense.
Again, only the bolded portion was excluded. The language in this instruction is found in O.J.I. 409.60. It is possible the portion omitted by the trial court may have been helpful to the jury by further illustrating the preponderance of evidence standard for self-defense. However, we find that the instruction as given adequately explained this standard, and therefore did not prejudice the defendant.
The third instruction Evans felt was omitted in error read:
 If you find that the facts of this case show that less than deadly force was used against Harold Evans, Harold Evans had no duty to retreat prior to defending himself.
This proposed instruction misinterprets the law. The proper instruction would state that Evans had no duty to retreat prior to defending himself with non-deadly force. State v. Perez (1991), 72 Ohio App.3d 468, 472. The level of force used by the aggressor is not the relevant focus of the duty to retreat, instead, it is the level of force used by the defender. Deadly or non-deadly force of the aggressor is only relevant to the level of force used to defend. Id.
Moreover, even given correctly, this instruction could have been detrimental to Evans. The jury may have felt that Evans did attempt to use deadly force by choking Loftis with both hands. In any event, we do not find that failure to include this instruction rises to the level of plain error.
Evans' final proposed instruction is not relevant to the present case. The instruction explains that intoxication can make a person incapable of forming the necessary intent to commit a crime. In this case, Evans fought to exclude evidence that he was drinking the night of the incident. His potential intoxication was never contemplated as a possible defense to forming the intent to commit the crime. It would therefore be inconsistent to have included such an instruction.
Based on the foregoing discussion, we find that the jury instructions as given were adequate, and the omission of Evans' proposed instructions did not result in prejudice. Accordingly, Evans' fourth assignment of error is overruled.
 V
In his final assignment of error, Evans argues that his conviction was against the manifest weight of the evidence. When reviewing a manifest weight claim, the appellate court "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387. A verdict should only be overturned in extraordinary situations when evidence weighs heavily against the conviction. Id.
Evans specifically argues that the evidence did not demonstrate that he knowingly caused or attempted to cause Loftis physical harm, but the evidence did prove he acted in self-defense. A person acts knowingly "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). On the other hand, to establish self-defense, an individual must show (1) he was not at fault in creating the situation causing the injury; (2) he had a good faith belief he was in imminent danger; and (3) he did not violate any duty to retreat or avoid the danger. State v. Thomas (1996),77 Ohio St.3d 323, 326.
Considering all of the testimony elicited at trial, it appears that the events surrounding the charge against Harold Evans were witnessed only by Evans, Daniel Loftis, Scottie Rowe, Dennis Rhines and John Boone. There was some conflicting testimony regarding whether Boone was in the room at the time of the incident, but Boone himself testified he walked in as the fight began. Additionally, there were minor inconsistencies between the testimony of Loftis, Rowe, and Rhines regarding distances, exact location of each individual, and specific words exchanged, but their testimony was the same as to the core events.
Loftis, Rowe and Rhines all testified that Evans entered the room at approximately 10:30 PM on April 19th, the beginning of third shift. Evans typically worked day shift, but was filling in on third shift that night. As soon as he entered the room, he began questioning Rowe about his job description. When Rowe answered that he had no written job description, Evans began arguing with him about his failure to do his job, and leaving all the work for the day shift to complete. Testimony varied as to how long this conversation lasted, but everyone agreed Evans was very loud and angry.
Eventually, Loftis crossed the room to where the telephone was located and paged his committeeman and the foreman. Soon after, Evans turned toward Loftis and made some comments to him. There were several different variations of what words were exchanged and exactly how the altercation transpired. Loftis said Evans approached him, asked if he wanted to "fuck with him" and then punched him once in the eye and twice in the mouth before grabbing Loftis' throat and choking him. All Rowe claimed he heard was Loftis saying "my name is Dan," followed by Evans approaching Loftis and striking him two or three times, then grabbing his throat. Rhine claimed Evans asked Loftis if he thought something was funny prior to striking him. Although Rhine was unsure how many times Evans struck Loftis, he did see both Evans' hands around Loftis' throat. All three of these witnesses testified that throughout the altercation, Loftis' hands remained in his pockets.
Conversely, Boone testified he walked in just before Evans hit Loftis, so he heard no conversation. He testified that he witnessed Loftis move quickly toward Evans, but did not see Evans move toward Loftis at all. In addition, Boone testified that Evans smacked Loftis once and shoved him against the wall, but did not choke him. However, even a police officer testified that Loftis still had marks on his neck when he interviewed him the next morning. Furthermore, Evans admitted at trial and to the police that he had Loftis in a choke hold.
Evans agreed that he began an argument with Rowe about neglecting his job. He admitted that he was angry because as a day shift worker, he was tired of the third shift workers shirking their duties. Evans explained that he had been involved in a heated discussion with Rowe for a few minutes before he even realized Loftis was in the room. When he noticed him, Evans turned to Loftis and said, "that goes for you, too." He then turned back to Rowe to continue the discussion, when out of the corner of his eye, he noticed Loftis approaching him quickly. As he neared, Evans turned toward Loftis with his left hand swinging. He was unsure if he hit him or not, but in one motion he turned and grabbed his neck. Almost immediately, Rhines and Rowe were on Evans, hitting him and placing him in a choke hold. Evans refused to let go of Loftis until Rowe and Rhines let go of him, because he knew he had control of at least one of the three. When the foreman entered the room, everyone let go. Incidentally, the foreman did not testify.
All witnesses agreed that after Evans grabbed Loftis, Rowe and Rhines grabbed Evans in an attempt to force him to release his grip. Almost everyone also testified that Evans had the smell of alcohol on his breath at the time of the incident. In fact, Evans himself testified that he had two beers with dinner prior to arriving at work.
In a situation where there is a conflict between credible witnesses and their conflicting testimony, we will not disturb the findings made by the trier of fact unless "it is so incredible that it defies belief." Fairborn v. Boles (May 15, 1998), Greene App. No. 97 CA 110, unreported, at p. 3. We must give deference to the trier of fact "where there exists competent and credible evidence supporting [its] findings and conclusions * * *." Myers v. Garson (1993), 66 Ohio St.3d 610, 614.
Although there were minor discrepancies in the testimony given by the state's witnesses, Loftis, Rowe and Rhines all portrayed Evans as the aggressor who hit Loftis more than once and then choked him for a period of time until interrupted by the foreman. Boone's testimony varied from the other three state witnesses, but he may have suffered from credibility issues since police officers and Evans himself contradicted his testimony about the choking. In addition, some witnesses even said Boone was not in the room during these events. Considering all of the evidence together, we find there was competent and credible evidence that Evans acted knowingly and not in self-defense.
Based on the foregoing discussion, we do not find that the jury clearly lost its way and created a manifest miscarriage of justice. Accordingly, Evans' fifth assignment of error is overruled.
Judgment is reversed based on Evans' second and third assignments of error and the case is remanded for a new trial.
FAIN, J., and GRADY, J., concur.