OPINION
Defendant-appellant, Marvin L. Bibb, Jr., appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of felonious assault in violation of R.C. 2903.11.
According to state's evidence, on April 8, 1999, Mary Weber had been living with defendant approximately one month, although they had lived together intermittently in the past. On the morning of April 8, 1999, defendant and Weber went to collect pallets to sell to a pallet yard. After the two returned home, Weber walked down the street to purchase beer. Defendant stood outside, watching as Weber walked to the store. En route to the store, Weber spoke to a man. When Weber returned home, defendant accused her of "having something going on" with him. They argued about it for a while. Later the two drank the beer, watched television, and fell asleep on the floor.
Weber awoke first, and when defendant awoke, they began arguing again. Defendant slapped her in the face three times. Weber left the house, went to the pay phone, called her mother, and was told to go to the home of a family friend, Andy, who lived within walking distance from defendant's home.
On arriving at Andy's house, Weber again telephoned her mother. A few hours later defendant arrived at Andy's home, and threw Weber's shoes and socks on the porch, as she had left wearing only a tee shirt and shorts. Weber later walked to Dan's Drive-Thru, purchased a pack of cigarettes, and returned to Andy's house.
Between 9:00 and 10:00 p.m., defendant came back to Andy's house, threatening that if Weber did not come out, he would come in the house. To prevent defendant from coming into Andy's house, Weber went outside and observed a police car just a short distance from the house. According to Weber's testimony, she told defendant "[y]ou better not touch me, there's a police officer right there. And at that point, he grabbed me with his right hand, and then he said, `oh, really, bitch.' And then he pulled back and then he threw a punch at me and broke my jaw." (Tr. 254-255.) Weber started to run toward the police car, and defendant ran in the other direction. Weber testified that she reported the incident to the police officer, but he told her he was busy and she should go back home.
Weber went to a nearby gas station to call her mother, and then went back to Andy's home. Weber's mother telephone another friend, Harold Jones, who, accompanied by police officers, picked up Weber the next morning at Andy's home. The police officers escorted Weber to the hospital.
As a result of the foregoing, defendant was indicted on one count of felonious assault. A jury found defendant guilty, and the trial court sentenced defendant accordingly. Defendant appeals, assigning the following errors:
 FIRST ASSIGNMENT OF ERROR: THE TRIAL COURT ERRONEOUSLY GRANTED THE STATE'S MOTION IN LIMINE.
 SECOND ASSIGNMENT OF ERROR: THE TRIAL COURT ERRONEOUSLY OVERRULED DEFENSE OBJECTIONS TO STATEMENTS FALLING WITHIN THE DEFINITION OF HEARSAY, AND NOT SUBJECT TO ANY OF THE RECOGNIZED EXCEPTIONS.
 THIRD ASSIGNMENT OF ERROR: APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant's first assignment of error asserts the trial court erred in granting the state's pretrial motion in limine.
The granting of a motion in limine is a tentative, interlocutory, precautionary ruling reflecting the trial court's anticipatory treatment of an evidentiary issue. State v. Grubb (1986), 28 Ohio St.3d 199. "At trial it is incumbent upon a defendant, who has been temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal." Id., paragraph two of the syllabus, citing State v. Gilmore (1986),28 Ohio St.3d 190.
Defense counsel initially sought to introduce evidence that Weber engaged in prostitution and abused drugs, contending the evidence tended to prove Weber's dangerous lifestyle most likely resulted in her being beaten by someone else. Defendant further sought to impeach Weber with evidence of motive under Evid.R. 616: she blamed the broken jaw on defendant because she wanted revenge on defendant for him having told the police about an outstanding warrant for Weber's arrest. The prosecution responded that defendant was attacking Weber's character in a manner prohibited by Evid.R. 608.
Initially, to the extent defendant contends he was entitled to establish Weber had a propensity for putting herself at the risk of being harmed by others through prostitution and drug dependency, the record shows defendant failed to proffer such evidence at trial and thus waived it on appeal. Grubb, supra. Moreover, evidence of Weber's drug use was revealed at trial.
As to defendant's proffered evidence of motive, the trial court has broad discretion in the admission and exclusion of evidence. Unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should be slow to interfere. State v. Hymore (1967), 9 Ohio St.2d 122, 128; State v. Chavis (Dec. 26, 1996), Franklin App. No. 96APA04-508, unreported. Defendant's argument that he was precluded from impeaching Weber by motive is without merit. Although the warrant was for loitering and soliciting for prostitution, defendant, through counsel, decided not to go into the details of the substance of the warrant. With that, the trial court allowed defendant to question Weber regarding the warrant as a motive. Weber testified defendant did not turn her in, but she turned herself in to the police, and therefore she had no reason to seek revenge against defendant.
Defendant's remaining arguments under the first assignment of error do not relate to the motion in limine, but challenge two evidentiary rulings. Defendant asserts he was not allowed to cross-examine Linda King, Weber's mother, as to why Weber's son resided with her. The trial court concluded defendant was attempting to introduce evidence of Weber's character. Even if the trial court erred in its conclusion, defendant has not established how the evidence had any bearing on his guilt.
Defendant lastly contends the trial court wrongly prevented him from questioning Harold Jones regarding a statement Jones allegedly made to defendant, that "Mary will set us both up." Defendant asserts the comment supported his defense that Weber's allegations were prompted by a desire to seek revenge against him. The trial court determined defendant did not have a good faith basis for the question, and in response, defendant failed to demonstrate a good faith basis. The trial court thus did not abuse its discretion See State v. Hunt (1994), 97 Ohio App.3d 372. Accordingly, defendant's first assignment of error is overruled.
Defendant's second assignment of error asserts the trial court erred in allowing the state to present hearsay testimony. "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is not admissible unless an exception applies. See Evid.R. 802.
Defendant notes that Linda King, Weber's mother, was allowed to testify over objection regarding her conversations with Weber. Defendant first challenges King's testimony that Weber stated "I am trying to get over to Andy's," and "Marvin won't let me." In response to defendant's objection, the prosecution stated the testimony was offered not for its truth, but to show what King did as a result of the conversation. The objection was overruled. The prosecution continued to interrogate King, who ultimately revealed that as a result of her conversation with Weber, King called Harold Jones to take Weber to the hospital.
"It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed. Such statements are not offered for truth and thus they are not excluded since hearsay is defined as a statement offered to prove the truth of the matter asserted. See Evid.R. 801(C)." State v. Millar (Sept. 25, 1990), Franklin App. No. 89AP-1119, unreported, citing State v. Thomas (1980), 61 Ohio St.2d 223,232 (holding passerby's statements to two officers that a male was dragging a woman through a vacant lot was admissible because it was offered not for the truth of the statement, but to show the officer's subsequent actions).
Defendant nonetheless contends the prosecution elicited King's testimony to corroborate Weber's testimony, rather than explain King's actions. Even if the trial court erred, any error was not prejudicial, as King did not implicate defendant in connection with Weber's broken jaw. King simply testified Weber said her jaw was broken, a fact that was not disputed. Moreover, immediately subsequent to King's statements, the trial court instructed the jury the evidence was offered to show what King did in response to Weber's call, not to prove the truth of the matter asserted. Defendant's second assignment of error is overruled.
Defendant's third assignment of error contends defendant's conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. When presented with a sufficiency of the evidence argument, we construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported.
The jury found defendant guilty of felonious assault in violation of R.C. 2903.11(A), which provides in relevant part: "No person shall knowingly * * * [c]ause serious physical harm to another * * *." Defendant asserts Weber's uncorroborated testimony is insufficient to sustain a conviction. To the contrary, Weber's testimony alone, if believed, is sufficient to allow a jury to find defendant knowingly caused serious physical harm to her. Weber testified defendant grabbed her by her arm, and punched her in the jaw, breaking her jaw. Conley, supra (holding that a victim's testimony alone is sufficient to sustain conviction if it allows the jury to find all the elements of the offense); State v. Mayhew (Mar. 30, 1993), Franklin App. No. 92AP-1375, unreported; State v. Winters (June 15, 2000), Franklin App. No. 99AP-923, unreported. Thus, the evidence is sufficient to support the conviction.
Defendant also contends the court erred in failing to grant his Crim.R. 29 motion. "Crim.R. 29(A) requires the court to enter a judgment of acquittal if the evidence is insufficient to sustain a conviction of the offenses alleged in the indictment. `Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.' State v. Apanovitch (1987), 33 Ohio St.3d 19, 23; State v. Dennis (1997), 79 Ohio St.3d 421, 430. In reviewing a ruling on a Crim.R. 29(A) motion for judgment of acquittal, the reviewing court construes the evidence in a light most favorable to the state. State v. Wolfe (1988), 51 Ohio App.3d 215, paragraph one of the syllabus; State v. Busby (Sept. 14, 1999), Franklin App. No. 98AP-1050, unreported. See, also, State v. Brown (1994), 99 Ohio App.3d 604, 607, citing State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus." State v. Clay (Mar. 28, 2000), Franklin App. No. 99AP-404, unreported. Because the evidence, as noted above, was sufficient to allow a rational factfinder to conclude the state had sustained its burden, the trial court properly denied defendant's Crim.R. 29(A) motion.
Lastly, defendant contends the verdict is against the manifest weight of the evidence. When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting evidence"). Conley, supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230.
Defendant asserts several of Weber's actions on the night of the incident, or her testimony about them, discredit her testimony. Defendant first notes Weber's testimony was unbelievable insofar as she stated she was ignored when she approached a police officer immediately after the blow to her jaw. Defendant did not introduce any evidence to contradict her testimony. Moreover, defendant's argument raises an issue of credibility properly within the jury's province to resolve.
Defendant next refers to Weber's testimony that, after arriving at Andy's, she subsequently walked to Dan's Drive-Thru to purchase cigarettes. Defendant claims her testimony is suspect, because Dan's Drive-Thru is farther from Andy's house than a nearby store. Weber testified she did not go to the same store she earlier had patronized, because it was on the same road as defendant's house and she did not want defendant to see her. A jury reasonably could conclude Weber's explanation was credible.Defendant next notes Weber waited until the next morning to go to the hospital that was only a few blocks away. Weber, however, testified she did not immediately go to the hospital because "I just didn't want to go there by myself. I wanted to wait for someone so I knew that I would be in the hands of someone that was going to take me to the hospital and then take me home." (Tr. 258.) Again, Weber's testimony provides a reasonable explanation which a jury could find credible.
Defendant also points to state's Exhibit 2, a document from the hospital that treated Weber, stating Weber's injury "occurred just prior to her arrival here." Weber, however, testified she did not tell the hospital personnel she was hit just before coming to the hospital; she reported she was hit the previous night. As an explanation, she offered that before the officer knew the whole story, he may have told them she was just hit prior to her arrival. Lending credibility to Weber's explanation, Officer David Spaulding testified he took Weber to the hospital and subsequently took a report regarding the incident. Thus, the jury again could properly find Weber's testimony believable.
Defendant also contends that instead of using the telephone at Andy's home after being struck, Weber went to a nearby gas station to call her mother. Defendant fails to state how Weber going to gas station to call her mother impeaches her testimony. Weber, however, testified that after defendant punched her in the face, she was devastated and ran toward the police car as defendant ran in the other direction, which may explain Weber's phone call.
Lastly, defendant contends James Chavis' testimony discredits Weber, as Chavis testified Weber was uninjured when he saw her several times on the night of the incident. Chavis testified he saw Weber at approximately 11:30 p.m. Weber wore shorts and a tee shirt, but was barefoot. Further, testifying he saw her on and off all night, Chavis stated Weber was not bruised or beaten up when he saw her. On further questioning however, Chavis testified he could not be sure he saw Weber on the night of the incident. When asked, "[b]ut how did you know that that was the same night Defendant was speaking of," Chavis replied, "[w]ell, actually, I didn't * * *." (Tr. 431.) Chavis' testimony thus does not render Weber's testimony unbelievable.
Credibility is within the province of the trier of fact, and because the jury here could find Weber credible, the verdict is not against the manifest weight of the evidence. Defendant's third assignment of error is overruled.
Having overruled defendant's three assigned errors, we affirm the judgment of the trial court.
 ____________________ BRYANT, P.J.
TYACK and KENNEDY, JJ., concur.