[Cite as *State v. Tilley*, 2012-Ohio-1533.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96756**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ROY L. TILLEY

DEFENDANT-APPELLANT

---

## JUDGMENT:
### REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-544047

**BEFORE:**   Celebrezze, J., Blackmon, A.J., and Rocco, J.

**RELEASED AND JOURNALIZED:**   April 5, 2012

**ATTORNEY FOR APPELLANT**

Timothy F. Sweeney
Law Office - Timothy Farrell Sweeney
The 820 Building
Suite 430
820 West Superior Avenue
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:    Mary Court Weston
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Defendant-appellant, Roy Tilley, appeals from his convictions for abduction and kidnapping. After careful review of the record and relevant case law, we reverse and remand for a new trial.

**{¶2}** On November 15, 2010, appellant was named in a four-count indictment that charged him with kidnapping in violation of R.C. 2905.01(A)(3); felonious assault in violation of R.C. 2903.11(A)(1); domestic violence in violation of R.C. 2919.25(A), with a prior conviction and pregnant victim specifications; and domestic violence in violation of R.C. 2919.25(A), with a pregnant victim specification.

**{¶3}** Appellant's jury trial proceeded on March 3, 2011, with jury selection and opening statements. On March 4, 2011, the prosecutor informed the trial court that, following opening statements, she learned that the alleged victim, Brooke Herman, had previously received two handwritten letters from appellant while he was incarcerated. The prosecutor advised the court that she intended to use the letters as evidence. Defense counsel objected based on the state's failure to timely disclose the letters and requested that the letters be excluded from the trial entirely. Finding that exclusion of the letters was inappropriate, the trial court ordered a brief continuance to allow defense counsel to meet with appellant to inspect the contents of the letters. Following the continuance, the state proceeded with its case in chief.

**{¶4}** Brooke Herman testified that she was appellant's ex-girlfriend and lived with him in an apartment in Lakewood, Ohio, from April 2010 to August 2010. While living with appellant, Brooke became pregnant with his child. Subsequently, she moved to Ashtabula, Ohio, to live with her father for the remainder of her pregnancy.

**{¶5}** Brooke testified that on November 5, 2010, she was visiting appellant at his mother's apartment in Cleveland, Ohio. At that time, she was approximately eight-and-one-half months pregnant. While inside the apartment, she and appellant began to argue about his alleged infidelities. Brooke testified that as the argument progressed, she attempted to leave the apartment, but appellant prevented her from leaving by dragging her into the kitchen by the hood of her sweatshirt and stating, "you're not leaving me."

**{¶6}** Brooke stated that the argument became more intense when appellant forced her into his bedroom. She testified, "I grabbed my bags up off the floor again, and he punched me in the back of my neck and I fell on to the bed;[1] and then we were on the bed, he had his hands around my neck and I couldn't breathe, really; and then I was getting up, he punched me in the back."

**{¶7}** Brooke testified that the altercation in the bedroom ended when appellant's mother walked into the room. Brooke immediately left the apartment, telling appellant

---

[1] Brooke testified that she believed that the strike to her neck caused her to lose consciousness for a "split second."

as she exited that she was going to the police station to report the assault. In response, appellant stated, "if you go to the police station, Brooke, I'm going to kill you."

{¶8} Brooke walked to the Cleveland Police Second District police station and informed the officers that she was pregnant and was the victim of domestic violence. She testified that her throat, neck, and back were sore from the altercation. She was immediately taken to MetroHealth Medical Center, where she was evaluated and placed in a neck brace. She stated that once she arrived at the hospital, the medical staff decided to induce her labor to avoid any potential complications.

{¶9} Brooke testified that she received two letters from appellant while he was awaiting trial. She identified the letters on the record,[2] and testified that the letters contained apologies from appellant for the events of November 5, 2010.

{¶10} Officer Patty Katynski of the Cleveland Police Department testified that she responded to the radio broadcast relating to the domestic violence assault on Brooke. She went to MetroHealth Medical Center, where she met Brooke in her hospital room. Brooke was crying, upset, and complaining of pain. Officer Katynski testified that Brooke informed her that she had been assaulted and threatened by appellant, the father of her unborn child. She observed injuries consistent with an assault, including red marks and swelling near Brooke's neck and ear, however, she did not take photograph's of Brooke's injuries. Following her conversation with Brooke, she responded to appellant's mother's residence and arrested appellant.

---

[2] State's exhibit Nos. 1 and 2.

{¶11} Detective John Freehoffer of the Cleveland Police Department testified that on November 6, 2010, he went to MetroHealth to interview Brooke. Brooke was wearing a neck brace and had obvious redness on her neck. He attempted to interview Brooke and have her complete a written statement. As Brooke was completing her written statement, she began having painful contractions, which forced Det. Freeholder to leave her hospital room prematurely. He was unable to take photographs of Brooke's injuries.

{¶12} At the close of the state's case, appellant made a motion for acquittal on all counts. As to the felonious assault count, he argued that the state failed to present evidence that Brooke sustained any "serious physical harm." Upon careful consideration, the trial court permitted the state to amend the charge to attempted felonious assault. Subsequently, the trial court denied appellant's motion for acquittal as to the kidnapping count, but dismissed one count of domestic violence, without objection.

{¶13} Brittnie Rusyn testified on behalf of appellant. She stated that she had been sexually active with appellant while he was in a relationship with Brooke. She stated that she was in the Hobbs residence at the time the alleged assault occurred. She observed Brooke arguing with appellant after his mother told Brooke she needed to go home. Rusyn testified that appellant "never laid hands on [Brooke]" and if he had assaulted Brooke, she would have witnessed it. She testified that as Brooke left the apartment, she stated, "I'm going to the police station and saying you hit me."

{¶14} Appellant's mother, Sonya Hobbs, testified that on November 5, 2010, she informed appellant that Brooke had to leave her apartment because she did not want guests there while she was away. She allowed Brooke to use her cell phone to call for a ride to her father's home in Ashtabula, Ohio. When she went into appellant's bedroom to retrieve her cell phone, she observed appellant and Brooke talking on the bed. She denied the allegation that appellant was choking Brooke when she walked into his bedroom. Sonya further testified that appellant did not prevent Brooke from leaving the apartment and never hit Brooke, as alleged by the state.

{¶15} At the conclusion of trial, the jury found appellant guilty of abduction, a lesser included offense of kidnapping; and guilty of domestic violence with prior conviction and pregnant victim specifications. The jury was unable to reach a verdict on the amended attempted felonious assault charge, and the trial court declared a mistrial on that count.[3]

{¶16} At appellant's sentencing hearing, the trial court determined that his convictions for abduction and domestic violence were allied offenses of similar import, and thus merged for sentencing purposes. The state elected to pursue sentencing on the abduction charge, and appellant was sentenced to two years in prison, to run concurrently to a one-year sentence received in an unrelated case.

---

[3] On December 12, 2011, the trial court granted appellant's motion to dismiss Count 2 with prejudice, rendering this appeal a final, appealable order.

**{¶17}** Appellant appeals his convictions, raising five assignments of error.[4] Because it is dispositive, we address his second assignment of error first.

Law and Analysis

I. Prosecutorial Misconduct

**{¶18}** In his second assignment of error, appellant argues that prosecutorial misconduct deprived him of his constitutionally guaranteed right to a fair trial.

**{¶19}** The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the substantial rights of the accused. *State v. Smith*, 14 Ohio St.3d 13, 470 N.E.2d 883 (1984). A new trial will be ordered where the outcome of the trial would clearly have been different but for the alleged misconduct. *State v. Brewer*, 8th Dist. No. 67782, 1995 WL 371322 (June 22, 1995). When applying this test, we consider "the effect the misconduct had on the jury in the context of the entire trial." *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993). In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury still would have found the appellant guilty. *State v. Maurer*, 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984).

A. Witness Tampering Allegations

---

[4] Appellant's assignments of error are contained in the appendix to this opinion.

{¶20} Initially, appellant contends that the state committed prosecutorial misconduct when it informed the court that there was a possibility that witness tampering had occurred during trial. At the conclusion of the state's case-in- chief, the state alleged, outside the presence of the jury, that appellant's uncle, Walter Hobbs, had improperly discussed Brooke's testimony with upcoming defense witnesses. The prosecutor stated:

> I want to place on the record during the break I was approached by three different people, those being Deputy Lawrence, Detective Freehoffer and victim advocate Lynn, who is in the back of the room, who advised me there is a gentlemen in the back of the room wearing a gray shirt who is reporting the testimony of the witnesses to the upcoming two witnesses.

{¶21} Based on the allegations, the state moved to exclude the testimony of the upcoming witnesses as a sanction for violating the trial court's order requiring separation of witnesses. The trial court stated that the unproven charge, if true, was "likely a contempt of court." The trial court ordered the deputy sheriff to immediately arrest Walter Hobbs and set a hearing, outside the presence of the jury, to determine whether the prosecutor's allegations had merit. The trial court instructed the parties that "the jury is not being inconvenienced by this," and if the trial court is convinced that the witness tampering had occurred, the trial court would then fashion an "instruction that there was a violation * * * and that the jury may consider that violation when determining the credibility of the witnesses." However, the trial court permitted defense witnesses Rusyn and Sonya Hobbs to testify, stating that the court would revisit appropriate sanctions at the conclusion of the trial, if necessary.

**{¶22}** We are unable to conclude that the state committed prosecutorial misconduct by informing the court that possible witness tampering had occurred. The record reflects that the state made the allegations in good faith based on information received from three separate individuals, Deputy Sheriff Paul Lawrence, Detective John Freehoffer, and victim advocate Lynn Nugent. Accordingly, we find no merit to appellant's complaint of misconduct where the state's tampering allegations were supported by the testimony of Deputy Lawrence, Det. Freehoffer, and Ms. Nugent.

B. Reference to Witness Tampering in the Presence of the Jury

**{¶23}** Next, appellant complains that the state committed prosecutorial misconduct when it referenced the alleged witness tampering and arrest of Walter Hobbs during the cross-examination of defense witness, Rusyn. Appellant specifically complains of the following question posed by the prosecutor during the state's cross-examination of defense witness Rusyn:

> PROSECUTOR: Would you agree with the proposition that if you really, really wanted to believe something, you might start believing it? Would you agree with that?
>
> RUSYN: Yes.
>
> PROSECUTOR: Did you know a young man sitting in the back of the courtroom today wearing a gray shirt?
>
> RUSYN: Yes.
>
> PROSECUTOR: Who is that person?
> RUSYN: Roy's uncle.
>
> PROSECUTOR: In fact, did he not at one point come out into the hallway and talk to you about the case as it was progressing in here?

RUSYN:   No.   He had us put money in the meter for him.

PROSECUTOR:   So would you be surprised to know that three other people reported he was talking about testimony?

DEFENSE COUNSEL:   Objection.

THE COURT:   Overruled.

PROSECUTOR:   Would it surprise you?

DEFENSE COUNSEL:   Objection, not in evidence your Honor.

THE COURT:   This is cross-examination.

PROSECUTOR:   Would you be surprised?

RUSYN:   Yeah, I would.

PROSECUTOR:   In fact, were you present in court today when that man was arrested for that?

DEFENSE COUNSEL:   Objection, your Honor.

THE COURT:   Well, why don't we go on to another question.

{¶24} Evid.R. 611(B) states that cross-examination shall be permitted on all relevant matters and matters affecting credibility. "The limitation of * * * cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case.   Such exercise of discretion will not be disturbed in the absence of a clear showing of an abuse of discretion."   *State v. Acre*, 6 Ohio St.3d 140, 145, 451 N.E.2d 802 (1983).   But "[i]t is improper for an attorney, under the pretext of putting a question to a witness, to put before a jury information that is not supported by the evidence."   *State v. Smidi*, 88 Ohio App.3d 177, 183, 623 N.E.2d 655 (6th

Dist.1993). And "[p]rosecutors must avoid insinuations and assertions calculated to mislead." *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

**{¶25}** Upon reviewing the record in its entirety and weighing the effects the prosecutor's comments had on the jury, we find the prosecutor's questions to be improper. At the time the improper questions were posed, the trial court had yet to conduct a hearing to weigh the merits of the prosecutor's allegations of witness tampering. Therefore, the prosecutor's insinuations that Rusyn's testimony was influenced by information she received from Walter Hobbs was not supported by the evidence. Furthermore, the improper questions were made in direct violation of the trial court's explicit instructions to the parties that it wished to handle the prosecutor's allegations of witness tampering outside the presence of the jury.

**{¶26}** Accordingly, we find that the prosecutor's questions were improper and wrongfully impugned the credibility of the defense witness offered in support of appellant's defense.

**{¶27}** We now turn to the critical question of whether this line of questioning deprived appellant of a fair trial. Here, given that the state's case hinged primarily on the testimony of Brooke — evidence that was highly contested at trial by appellant and his witnesses, Rusyn and Sonya — the jury's decision came down to a weighing of the credibility of the witnesses. Thus, this is not a case in which the state's evidence is so overwhelming that we could otherwise ignore the improper attack on the credibility of the witness. Indeed, the core of appellant's defense rested on the credibility of his witnesses.

Therefore, the unsupported insinuation that Rusyn's testimony was improperly influenced by Walter Hobbs affected appellant's entire defense, thereby depriving him of a fair trial. *See State v. Davis*, 10th Dist. No. 01AP-579, 2002 WL 576077 (Apr. 18, 2002), citing *State v. Hunt*, 97 Ohio App.3d 372, 375, 646 N.E.2d 889 (10th Dist.1994) ("where the core of the case rests with the credibility of the defendant and witnesses, the prosecutor's conduct was prejudicial and deprived appellant of a fair trial").

{¶28} Moreover, any prejudice caused to appellant by the insinuation that Walter Hobbs tampered with Rusyn's testimony was further heightened by the trial court's failure to sustain defense counsel's repeated objections and provide a curative instruction. *See State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993) (trial court's failure to sustain an objection and provide curative instruction gives prosecutor's comment its approval in the jury's eyes).

{¶29} Accordingly, we conclude that appellant's substantial rights were violated, thereby depriving him of a fair trial. Appellant's second assignment of error is sustained.

{¶30} Having sustained this assignment of error, we find that the remaining assignments of error are moot.

{¶31} Judgment reversed and cause remanded for new trial.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

PATRICIA ANN BLACKMON, A.J., and
KENNETH A. ROCCO, J., CONCUR

APPENDIX

Assignments of error:

I.      The trial court committed prejudicial error by permitting the state to introduce the letters and statements that were not provided to the defense until after opening statements.

II.     Prosecutorial misconduct deprived Tilley of his constitutionally guaranteed right to a fair trial, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

III.    Roy Tilley's convictions in this case are based on evidence that is insufficient as a matter of law, in violation of Tilley's rights to due process and a fair trial as guaranteed by Article I, Sections 10 and 16 of the Ohio Constitution, and the Fourteenth Amendment to the United States Constitution.

IV.     Roy Tilley's convictions in this case are against the manifest weight of the evidence.

V.      The trial court erred in denying Tilley's Rule 29 motions as to the count of attempted felonious assault because there is an absence of constitutionally sufficient evidence to convict on that count.